Cong Nie, F0497
**BANES HOREY BERMAN & MILLER, LLC**
First Floor, Macaranas Building
4165 Beach Road, Garapan
P.O. Box 501969
Saipan, MP 96950
Tel.: (670) 234-5684
Fax: (670) 234-5683
Email: dnie@pacificlawyers.law
*Attorneys for Plaintiffs*

## IN THE DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MARTIN DELA CRUZ JR., MARTIN DELA CRUZ, and CHRISTOPHER LEEDELRIO, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PACIFIC RIM LAND DEVELOPMENT, LLC,<br><br>Defendant. | Civil Case No. CV-24-00009<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs Martin Dela Cruz Jr. ("Dela Cruz Jr."), Martin Dela Cruz, and Christopher LeeDelrio, on behalf of themselves and all other persons similarly situated, complain against Defendant Pacific Rim Land Development, LLC ("Pacific Rim") as follows.

### NATURE OF THE CASE

1. This is a case brought pursuant to the provisions of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, a law that protects workers from mass layoffs without adequate notice. Plaintiffs allege that Pacific Rim ordered a

1

mass layoff that affected Plaintiffs and other simulated situated employees without giving adequate notice in violation of the WARN Act.

## JURISDICTION

2. This Court has original jurisdiction this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

## VENUE

3. Violations of the WARN Act alleged here occurred in Saipan, CNMI, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) and 29 U.S.C. § 2104(a)(5).

## PARTIES

### Plaintiffs

4. At all times relevant, Dela Cruz Jr. was employed by Pacific Rim in the position of "rigger" and/or "laborer" to work on the construction of the casino-hotel complex project of Imperial Pacific International (CNMI), LLC ("IPI") in Garapan, Saipan.

5. At all times relevant, Dela Cruz was employed by Pacific Rim in the position of "carpenter" and/or "rigger" to work on the IPI project. Dela Cruz is Dela Cruz Jr.'s father.

6. At all times relevant, LeeDelrio was employed by Pacific Rim in the position of "field engineer" to work on the IPI project.

### Defendants

7. Pacific Rim is a CNMI limited liability company that, at all times relevant, engaged in the business of construction in the CNMI.

## FACTS

8. In 2014, IPI entered into a Casino License Agreement with the CNMI Lottery Commission for the issuance of an exclusive casino license to IPI.

9. The Casino License Agreement required IPI to meet certain development requirements.

10. As part of the development requirements, IPI planned to construct a casino-hotel resort complex, including a resort hotel, multiple hotel tower levels, a forecourt area, a casino podium, a beach club, and landscaped areas at a site in Garapan, Saipan (the "IPI site").

11. Around the beginning of 2018, Pacific Rim entered into a construction contract with IPI to perform construction work for IPI for the casino-hotel resort complex at the IPI site.

12. The construction contract provided that Pacific Rim would develop a construction plan with the goal of completing construction by May 31, 2019.

13. Upon information and belief, Pacific Rim did develop a construction plan with a target completion date in May 2019.

14. To perform the construction contract, Pacific Rim recruited people from Saipan, Guam, and other places to employ them in construction-related positions, including without limitation, general laborers, carpenters, riggers, equipment operators, welders, electricians, painters, pipelayers, and engineers for the IPI project.

15. All those employees worked at the same IPI site.

16. At all times relevant, there were 100 or more of those employees, and they worked every week in excess of 40 hours per employee.

17. Upon information and belief, IPI was delinquent in paying Pacific Rim under the construction contract.

18. Upon information and belief, IPI's first failure to pay Pacific Rim was on or about May 11, 2018.

19. Upon information and belief, to force IPI to pay, Pacific Rim's management threatened that it would suspend work at the IPI site unless IPI cured the nonpayment.

20. Upon information and belief, IPI promised to pay Pacific Rim but did not meet its payment obligations to Pacific Rim for June 2018 or subsequent months.

21. On or about July 25, 2018, Pacific Rim's management informed all of its construction-related employees for the IPI site that they should stop going to the IPI site until further notice from Pacific Rim's management.

22. There were over 180 full-time construction-related employees of Pacific Rim, including Plaintiffs, who were so informed on or about that date.

23. As a result, those 180 or more employees stopped going to work at the IPI site starting on or about July 26, 2018.

24. Upon information and belief, at the same time, Pacific Rim's management was negotiating with IPI to resolve payment issues.

25. In the construction industry, it was common for a contractor to suspend work when there were payment issues and to resume work when payment issues were resolved.

26. Plaintiffs and, upon information and belief, all the other construction-related employees of Pacific Rim (excluding its management), had a reasonable expectation to be recalled to the IPI site.

27. On or about September 25, 2018, Pacific Rim gave notice to the 180 or more employees that their status with Pacific Rim would be changed to layoff effective October 25, 2018, unless they were otherwise informed prior to October 25, 2018.

28. Pacific Rim informed its employees that it and IPI signed a Notice of Mutual Termination regarding the construction contract between them in September 2018.

29. Upon information and belief, at the time the Notice of Mutual Termination was signed by Pacific Rim and IPI, the work required under their construction contract was far from being completed by Pacific Rim.

30. Pacific Rim never called Plaintiffs, or any other similarly situated employees, back to work on the IPI site or any other work site after October 25, 2018.

31. Therefore, the last day of employment of Plaintiffs, as well as each of the other similarly situated employees, was October 25, 2018.

32. Their day of layoff for purposes of the WARN Act was October 25, 2018.

33. On that date, more than 180 construction-related employees of Pacific Rim, including Plaintiffs, were laid off.

34. On that date, upon information and belief, more than 180 construction-related employees of Pacific Rim suffered an "employment loss" as defined by 29 U.S.C. § 2101(a)(6) because they were never called back to work for Pacific Rim, and so their layoff exceeded 6 months.

35. Thos employees constituted almost the entire workforce (roughly 90% of the workforce) of Pacific Rim.

36. On the day of layoff, those employees were not "part-time employees" as defined by 29 U.S.C. § 2101(a)(8).

37. Because Pacific Rim's contract with IPI started around the beginning of 2018, initially, none of Pacific Rim's construction-related employees had been employed by Pacific Rim for more than 6 months in the last 12 months, unless they had previously worked for Pacific Rim or its affiliates.

38. However, this initial state was clearly unrepresentative of the ordinary or average employment level of Pacific Rim.

39. As its IPI contract and construction plan called for construction work until May 2019, during the majority of the term of the contract if it was not terminated early, Pacific Rim would have had either (a) more than 100 full-time employees who had been employed by Pacific Rim for at least 6 months, or (b) more than 100 employees who in the aggregate worked at least 4,000 hours per week (excluding overtime hours).

40. October 25, 2018, the effective day of layoff fixed by Pacific Rim was more representative of Pacific Rim's ordinary or average employment level.

41. On that date, Pacific Rim had more than 100 full-time employees who had been employed by Pacific Rim for at least 6 months.

42. Therefore, Pacific Rim was covered by the WARN Act, and the October 25, 2018 layoff constituted a "mass layoff" as defined by 29 U.S.C. § 2101(a)(3).

43. Plaintiffs, and other similarly situated employees, had been employed by Pacific Rim for more than 6 months by October 25, 2018 and were entitled to 60-day notice of a mass layoff under the WARN Act.

44. Upon information and belief, unbeknownst Plaintiffs and other similarly situated employees, Pacific Rim's management had expected that its construction contract with IPI would terminate early, had had a promissory note drafted as early as July 2018 to deal with payment issues with IPI, and could have informed Plaintiffs and other similarly situated employees months in advance of October 25, 2018 that they should not be expected to be called back at all.

## CLASS ALLEGATIONS

45. Plaintiffs bring a claim for violation of the WARN Act on behalf of themselves and on behalf of all other similarly situated former employees 29 U.S.C. § 2104(a)(5) and Fed. R. Civ. P. 23(a), who worked at the IPI site and were laid off on or about October 25, 2018, or within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the plant closing and/or mass layoff by Pacific Rim on or about October 25, 2018 and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) (the "Class").

46. More than 180 people are estimated to be in the Class identified above (the "Class Members"). Therefore, joinder is impracticable.

47. Upon information and belief, the identity of the members of the Class and the recent residence address of each Class Member is contained in the books and records of Pacific Rim.

48. The rate of pay and benefits that were being paid by Pacific Rim to each Class Member at the time of their termination is contained in the books and records of Pacific Rim.

49. Common questions of law and fact exist as to the Class Members, including, but not limited to, the following:

    a. whether Class Members were employees of Pacific Rim who worked at or reported to the IPI site in Garapan;

    b. whether Pacific Rim was covered by the WARN Act;

    c. whether a plant closing or mass layoff occurred triggering the notice requirement under the WARN Act;

      d. whether Pacific Rim failed to giving the Class members 60 days' advance written notice in violation of the WARN Act; and

      e. whether Pacific Rim failed to pay the Class Members 60 days wages and benefits as required by the WARN Act.

50. Plaintiffs' claims are typical of those of the Class. Plaintiffs, like other Class Members, worked at the IPI project site and were laid off by Pacific Rim on or about October 25, 2018, in a mass layoff and/or plant closing, as defined by 29 U.S.C. § 2101(a)(2), (3) or as the reasonably foreseeable result of the mass layoff or plant closing on that date.

51. Plaintiffs' claims are typical of those of the Class, in that all the Class Members were deprived of 60 days wages and benefits in the same manner.

52. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in employment litigation and, together with counsel's law firm, having prior involvement with an employment class action.

53. Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation—particularly in the context of WARN Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual Class members are small compared to the expense and burden of individual prosecution of this litigation.

54. Concentrating all the potential litigation concerning the WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that

might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

55. Plaintiffs intend to send notice to all Class Members to the extent required by Fed. R. Civ. P. 23.

## FIRST CAUSE OF ACTION
### Violation of the WARN Act
**(On Behalf of All Plaintiffs and Members of the Class)**

56. Plaintiffs re-allege and incorporate by reference herein the allegations of all the foregoing paragraphs as set forth above.

57. At all relevant times, Pacific Rim employed either (a) more than 100 employees, excluding part-time employees as that term is used in the WARN Act, or (b) more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

58. At all relevant times, Pacific Rim was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639(a), and continued to operate as a business enterprise until they decided to effect a mass layoff or plant closing at the IPI site.

59. On or about October 25, 2018, Pacific Rim effected a plant closing at the IPI site or a mass layoff.

60. The plant closing and/or mass layoff resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2), at the single IPI site, within a 30-day period, for at least 50 of Pacific Rim's employees (excluding "part-time employees" as that term is defined by 29 U.S.C. § 2101(a)(8)) as well as more than thirty-three percent (33%) of Pacific Rim's workforce (excluding "part-time employees," as that term is defined by 29 U.S.C. § 2101(a)(8)).

61. Plaintiffs and the other Class Members suffered an employment loss caused by Pacific Rim, without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Pacific Rim at the IPI site.

62. Plaintiffs and the other Class Members are "affected employees" of Pacific Rim within the meaning of 29 U.S.C. § 2101(a)(5).

63. Pacific Rim was required by the WARN Act to give the Plaintiffs and the other Class Members at least 60 days advance written notice of the plant closing or mass layoff.

64. Defendant failed to give the Plaintiffs and the other Class Members written notice that complied with the requirements of the WARN Act.

65. Plaintiffs and the other Class Members are "aggrieved employees" of Pacific Rim as that term is defined in 29 U.S.C. § 2104(a)(7).

66. Pacific Rim failed to pay Plaintiffs and the other Class Members their respective wages and employee benefits for 60 days required by the WARN Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated persons, pray for the following relief as against Defendant:

A. Certification of this action as a class action;

B. Designation of Plaintiffs as the Class Representatives;

C. Appointment of the undersigned attorneys as Class Counsel;

D. A judgment against Defendant and in favor of the Plaintiffs and the other similarly situated former employees equal to the sum of: their unpaid wages, salary, benefits, for 60 days, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(A);

E. Interest as allowed by law on the amounts owed under the preceding paragraphs;

F.    Plaintiffs' reasonable attorneys' fees and the costs and disbursements that the Plaintiffs incurred in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6), as well as applicable state law providing for attorneys' fees; and

G.    Such other and further relief as this Court may deem just and proper

## JURY DEMAND

Plaintiffs demand a jury trial as to all issues so triable.

Date: June 14, 2024.

BANES HOREY BERMAN & MILLER, LLC

*/s/ Cong Nie*
by Cong Nie, F0497
*Attorney for Plaintiffs*

11