F I L E D
Clerk
District Court
AUG 01 2025
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MARTIN DELA CRUZ JR., MARTIN DELA CRUZ, and CHRISTOPHER LEEDELRIO, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC RIM LAND DEVELOPMENT, LLC,<br><br>Defendant. | Case No. 1:24-cv-00009<br><br>AMENDED MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS[1] |

On June 14, 2024, Plaintiffs Martin Dela Cruz Jr., Martin Dela Cruz, and Christopher LeeDelrio (collectively "Plaintiffs") filed the instant action against Defendant Pacific Rim Land Development, LLC ("Pacific Rim"). Plaintiffs' Complaint asserted one cause of action: violation of the Worker Adjustment and Retraining Notification Act (the "WARN Act"). (Compl. ¶¶ 56-66, ECF No. 1.) On March 5, 2025, Plaintiffs filed a Motion to Certify Class under Rule 23 of the Federal Rule of Civil Procedure. (Mot. to Certify Class, ECF No. 12.) Pacific Rim opposed the Motion. (Opp'n, ECF No. 15.) Plaintiffs responded (ECF No. 16) and filed exhibits in support of their original Motion. (ECF Nos. 17-1–17-16.)

In their Motion, Plaintiffs defined the proposed class as "all former employees of Pacific Rim or its affiliates who were assigned to work at the construction site of the Imperial Pacific International ("IPI") casino & resort site in Garapan in 2018 and whose employment was terminated

---

[1] The Court sua sponte made its own non-substantive edits to the submitted proposed memorandum decision by Plaintiffs' counsel that was approved as to form by Pacific Rim's counsel. Subsequently, the Court granted the parties' Stipulated Motion to Correct Order. (ECF No. 30.) The Court therefore issues this Amended Memorandum Decision that deletes "or its affiliates" from the definition of the class. (*See* Mem. Decision 14, ECF No. 28.)

1

with an effective termination date in October 2018." (Mot. to Certify Class 1–2.) In their reply (ECF No. 16) and during oral argument, Plaintiffs revised and restated the proposed class definition to include all former employees of Pacific Rim Land Development, LLC who were assigned to work at the IPI casino & resort construction site in Garapan in 2018 and whose employment ended between October 2, 2018 and October 31, 2018.

On May 8, 2025, the Court held a hearing on Plaintiffs' Motion at which time the Court granted the Motion. (Min., ECF No. 18.) The Court now enters this Memorandum Decision providing its reasons for granting the motion.

I.         **FACTUAL BACKGROUND**

Below is a summary of relevant factual background as alleged in the Complaint and supported by the evidence submitted by Plaintiffs in their reply.

Pacific Rim is a company engaged in the business of construction in the CNMI. (Compl. ¶ 7.) Around the beginning of 2018, Pacific Rim entered into a construction contract with IPI (CNMI), LLC to perform construction work for IPI for building a casino-hotel resort complex at a site in Garapan, Saipan. (*Id.* ¶ 11.) To perform the contract, Pacific Rim recruited construction employees, including general laborers, carpenters, riggers, equipment operators, welders, electricians, painters, pipelayers, and engineers, to work on the IPI site. (*Id.* ¶¶ 14.) There were 100 or more of those employees, and they worked every week in excess of 40 hours per employee. (*Id.* ¶ 16.)

IPI, however, failed to pay Pacific Rim, starting around May 11, 2018. (*Id.* ¶ 18.) Plaintiffs allege that around July 25, 2018, Pacific Rim's management instructed all of its construction employees for the IPI site, including Plaintiffs, to stop going to the site until further notice. (*Id.* ¶ 21.) Then around September 25, 2018, Pacific Rim's management gave notice to the employees

that Pacific Rim signed a Notice of Mutual Termination with IPI regarding its construction contract, and that the employees' status with Pacific Rim would be changed to layoff effective October 25, 2018, unless they were otherwise informed prior to October 25, 2018. (*Id.* ¶¶ 27–28.) Pacific Rim did not call those employees back to work on the IPI site or any other work site after October 25, 2018. (*Id.* ¶ 30.)

Plaintiffs allege that Pacific Rim was covered by the WARN Act and effected a mass layoff as defined by the WARN Act, and therefore, should have given sixty-day notice to all employees affected by the mass layoff. (*Id.* ¶¶ 42–43.)

## II.  LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yakasaki*, 442 U.S. 682, 700–701 (1979)). To obtain certification, Plaintiffs bear the burden of establishing the four class requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

In addition to satisfying the four requirements enumerated in Rule 23(a), the putative class must also satisfy at least one of the three requirements in Rule 23(b). Fed. R. Civ. P. 23(b). Rule 23(b)(1)(B) merits certification if adjudications for individual class members "would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." *Id.* Rule 23(b)(3) authorizes certification when "questions of law or fact common to class members predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"Rule 23 does not set forth a mere pleading standard," *Dukes*, 564 U.S. at 350, and "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 350–51 (emphasis added). On the other hand, the Court accepts all allegations in the complaint as true "so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 609 (N.D. Cal. 2010).

Finally, while not expressly stated as a requirement in Rule 23, the members of a proposed class must be ascertainable. *See, e.g.*, *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1091 (C.D. Cal. 2015) (collecting cases). "A class is sufficiently defined and ascertainable if it is 'administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

## III.   DISCUSSION

Plaintiffs argue that the four requirements of Rule 23(a) are fulfilled, and they are able to meet the requirements of Rule 23(b)(1)(B) and (b)(3). The Court finds that each of the Rule 23(a) requirements are met and that both Rule 23(b)(1)(B) and 23(b)(3) are satisfied. (Mot. to Certify Class 3–8.) Further, the Court finds that the revised and restated class definition meets the ascertainability requirement. Therefore, the Court certifies the proposed class on those bases.

**A. Rule 23(a)**

*1. Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "[C]lass size is not a per se bar to class certification." *McCluskey v. Trs. of Red*

4

*Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 674 (W.D. Wash. 2010). And while there is no "magic number," as a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement. *See* 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[1][b] (3d ed. 2004). On the other hand, courts have "in appropriate circumstances" certified classes smaller than twenty-seven members. *McCluskey*, 268 F.R.D. at 673 (citing cases). Where class size is not particularly large, courts consider various factors including "(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members." *Id.* at 674. (citation omitted). The relevant question is whether joinder would be impracticable, not impossible. *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008).

Here, Plaintiffs maintain that numerosity is met because more than seventy employees of Pacific Rim were terminated with an effective termination date of October 25, 2018, or October 30, 2018. (Mot. to Certify Class 4.) In response to Pacific Rim's opposition regarding numerosity (Opp'n 3–5), Plaintiffs submitted in their reply (Reply, ECF No. 16), discovery materials produced by Pacific Rim showing employee separation forms (Employee Separation Forms, ECF No. 17-2), written layoff notification letters (Written Layoff Notification Letter, ECF No. 17-3), and an email layoff notice that indicated at least sixty-nine employees of Pacific Rim, other than the three named Plaintiffs, all to support Plaintiffs' contention. (Email Layoff Notice, ECF No. 17-4.) Plaintiffs also pointed to Pacific Rim's Answer, in which Pacific Rim admitted that the three named Plaintiffs were employed by Pacific Rim to work on the IPI site and were given the

same layoff notification because the IPI contract was terminated. (Answer ¶¶ 1 (admitting paragraphs 21 and 28 of the Complaint), 4–6, 12, 16, ECF No. 2.)

At the hearing on Plaintiffs' Motion, Pacific Rim verbally moved to strike the materials submitted with Plaintiffs' reply, and the Court denied the motion in the interest of judicial economy and in the spirit of Rule 1. (Mins., ECF No. 18.) At the same time, the Court offered Pacific Rim additional time to examine those materials and to prepare a response if it so desired. Pacific Rim declined and did not offer evidence to challenge Plaintiffs' assertion that more than seventy employees of Pacific Rim were terminated with a termination date of October 25, 2018, or October 30, 2018, as stated in their employee separation forms or layoff notices.

Besides the number itself, several factors weigh in favor of finding numerosity fulfilled. Members of the proposed class are mostly construction workers who were laid off, and are unlikely to be able to afford bringing individual claims as costs would be prohibitive. (Mot. to Certify Class 4.) The general costs of litigation would make joinder impracticable, and judicial economy will be served by avoiding individual actions from each terminated employee. Therefore, the Court finds that numerosity is met.

### 2. Commonality and Typicality

Rule 23(a) also requires that "there are questions of law or fact common to the class," and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)–(3). The U.S. Supreme Court in *Dukes* described commonality and typicality as "tend[ing] to merge. Both serve as guideposts for determining whether under the circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly

and adequately protected in their absence." 564 U.S. at 349 n.5 (citation and internal quotation marks omitted).

Regarding commonality, the test is determining whether the "common contention" is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. It requires that Plaintiffs "have suffered the same injury," not that "they have all suffered a violation of the same provision of law." *Id.*

Typicality may be satisfied if representative claims are "reasonably coextensive with [] absent class members; they need not be substantially identical." *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 681 (D. Nev. 2008) (citation and internal quotation marks omitted). The claim may "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members" and may be satisfied even if "there is a disparity in the damages claimed by representatives parties and other class members." *Id.* (internal quotation marks and citations omitted).

Both commonality and typicality are satisfied here. For commonality, the pertinent inquiry is whether the veracity of the putative class's common legal contention would resolve each individual members' claim "in one stroke." *Dukes*, 564 U.S. at 350. Here, Plaintiffs not only argue from a common legal vantage point—namely, their WARN Act claim—they also argue from a common factual vantage point that they were all assigned to work at the IPI site (Compl. ¶ 15.) and terminated around the same time without receiving sixty-day advance notice. (*Id.* ¶¶ 27, 44.) Thus, Plaintiffs assert the same injuries that Pacific Rim did not give the advance requisite notice and the same violation of the WARN Act.

7

Regarding typicality, the relevant question is whether the named Plaintiffs' claims and the members' claims are "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5. Here, Pacific Rim admitted in its Answer that it employed Plaintiffs to work on the IPI site and terminated them together with other employees due to the termination of its contract with IPI. (Answer ¶ 21.) While the case may result in a difference of damages among the members because damages under the WARN Act depend on each member's wages or other compensation, the damages all derive from the same event: Pacific Rim's termination of the employees and failure to give sixty-day advance notice. Thus, the Court finds that Plaintiffs meet the commonality and typicality standard.

### 3. Adequacy

Adequacy of representation requires that the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "[A]dequacy turns on two questions: (1) whether named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named parties and their counsel will prosecute the action vigorously on behalf of the class." *Moralez v. Whole Foods Market, Inc.*, 897 F. Supp. 2d 987, 998–99 (N.D. Cal. 2012). The class representative need not suffer the same type and degree of injury as every class member. *Id.* at 999. "Factual differences in the underlying claims of the class representative and class member will not preclude a finding of adequate representation if the class representative demonstrates an ability to vigorously pursue the claims of the class." *Id.*

In this action, the named Plaintiffs and members were subject to the same legal violations based on the same factual circumstances. That is, they are all seeking compensation for Pacific Rim's failure to give sixty-day advance notice before terminating them in violation of the WARN Act. (Compl. ¶¶ 9–10.) The events alleged in the Complaint occurred more than six years ago,

8

and Plaintiffs were the only individuals who took initiative to hire counsel and file the claim before the statute of limitations ran out. And, while Plaintiffs' counsel once represented IPI in Pacific Rim's lawsuit against IPI, he was representing a counterparty, not Pacific Rim. The law firm of Plaintiffs' counsel has been involved in class actions before this Court, and Plaintiffs' counsel, though not the lead counsel in those other class actions, has experience in those actions. Pacific Rim has not claimed any conflict of interest between the named Plaintiffs and any other member of the proposed class, or any conflict of interest on the part of Plaintiffs' counsel. Also, Pacific Rim has not contested the adequacy of Plaintiffs' counsel. Thus, the Court finds that there is adequate representation, and this final prerequisite is met.

**B. Rule 23(b)**

Plaintiffs argue that both Rule 23(b)(1)(B) and 23(b)(3) apply to this class. The Court finds that Plaintiffs satisfy both.

***1. Rule 23(b)(1)(B)***

Rule 23(b)(1)(B) requires finding that mandating litigation by the individual members "would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." The Ninth Circuit has adopted "an extremely conservative view," only allowing for Rule 23(b)(1)(B) certification when "a ruling in the first of a series of separate actions will 'inescapably alter the substance of the rights of others having similar claims.'" *Mateo v. M/S KISO*, 805 F. Supp. 761, 772 (N.D. Cal. 1991) (citing *McDonnell Douglas Corp. v. U.S. Dist. Ct., Cent. Dist. of Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975)). "To 'inescapably bind' members of the putative class the ruling in the first suit must present the substantial possibility of exhausting the funds available to a

defendant to pay later claims, or, actually bind absent members of the putative class through principles of res judicata." *Id.* at 773. Some district courts have certified WARN Act actions under Rule 23(b)(1)(B) on the basis of issue preclusion. *See Washington v. Aircap Indus. Corp.*, 831 F. Supp. 1292, 1294 (D.S.C. 1993) (expressing concerns that a decision in an individual action would preclude the defendant or a potential plaintiff from litigating issues of the applicability of the WARN Act); *Cruz v. Robert Abbey, Inc.*, 778 F. Supp. 605, 612 (E.D.N.Y. 1991) (noting that adjudication of facts concerning lay-offs will dispose of all class WARN Act claims).

Similarly, here, Rule 23(b)(1)(B) is met. A decision on the coverage of the WARN Act or whether a plant closing or mass layoff occurred, as to one individual member, would as a practical matter preclude Pacific Rim or another individual member from re-litigating those issues.

**2. Rule 23(b)(3)**

Rule 23(b)(3) requires an analysis of predominance and superiority. A class action is maintainable if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

*i. Predominance*

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Individual questions are those where "'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or whether] the issue is susceptible to generalized, classwide proof.'" *Id.* (citation omitted). Predominance asks whether "the common,

aggregation-enabling issues in this case are more prevalent or important than the noncommon, aggregation-defeating, individual issues." *Id.* (citation omitted). Common issues will not predominate if "a great deal of individualized proof would need to be introduced," or if "the resolution of an overarching common issue breaks down into an unmanageably variety of individual legal and factual issues." *Perez v. Leprino Foods Co.*, Case No. 1:17-cv-00686-AWI-BAM, 2021 WL 53068, at *1, 15 (E.D. Cal. Jan. 6, 2021) (citation and internal quotation marks omitted). Although the predominance inquiry shares features with the commonality-typicality test, the predominance standard is more demanding. *Amchem*, 521 U.S. at 623–24.

When one or more of the critical issues common to the case predominate, predominance may be satisfied "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc.*, 577 U.S. at 453 (citation omitted). Echoed by the Ninth Circuit in *Castillo v. Bank of America, NA*, 980 F.3d 723, 730 (9th Cir. 2020): "[i]ndividual differences in calculating the amount of damages will not defeat class certification where common issues otherwise predominate." Judicial economy is a familiar theme in a Rule 23 class action evaluation, and where the "class members' individual recovery is relatively modest, the class members' interests generally favors certification." *Mejia v. Walgreen Co.*, No. 2:19-cv-00218 WBS AC, 2020 WL 6887749, at *1, 6 (E.D. Cal. Nov. 24, 2020).

The Court finds that common questions predominate over individual questions. Plaintiffs state common questions of law and fact, including: (1) was Pacific Rim covered by the WARN Act; (2) did Pacific Rim order a plant closing or mass layoff; (3) did Pacific Rim give the requisite sixty-day notice to employees affected by the plant closing or mass layoff; and (4) did Pacific Rim have an affirmative defense such as completion of project or unforeseeable change in business

circumstances. The individual questions relate to damages, which as stated above, depend on each member's wages or rates of compensation. As the caselaw makes clear, individual damages do not automatically defeat issues that otherwise predominate. Thus, Plaintiffs have sufficiently met prong one of the Rule 23(b)(3) evaluation.

*ii. Superiority*

In addition to the predominance analysis, courts must evaluate the superiority of the class action mechanism. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) lists four non-exhaustive factors courts consider when evaluating superiority:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particularly forum; and

(D) the likely difficulties in managing a class action.

*Id.*

A superiority analysis "tests whether 'classwide litigation of common issues will reduce litigation costs and promote greater efficiency.'" *Hawkins v. Kroger Co.*, Case No.: 15cv2320 JM (AHG), 2020 WL 7421754, at *1, 19 (S.D. Cal. Nov. 9, 2020) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)); *see Rodriguez v. QS Next Chapter LLC*, No. CV-20-00897-PHX-DJH, 2020 WL 6882844, at *1, 5 (D. Ariz. Nov. 18, 2020) (determining that putative class's recoverable damages "are likely too small to justify individual litigation.").

Plaintiffs have succeeded in meeting the standards. First, there is no evidence that the class members have any individual interests in controlling separate actions, nor has there been any individual litigation that has already begun. Further, the alleged cause of action occurred in the CNMI and thus this is the only forum for the matter to be heard. Finally, there does not appear to be any difficulties in managing this class action. The proposed class appears to be unified in their assertions. The class action mechanism is the most appropriate and superior mechanism to adjudicate this matter for Plaintiffs, the other members of the proposed class, and Defendant.

### C. Ascertainability

Plaintiffs' initial class definition included employees of Pacific Rim's "affiliates." Pacific Rim objected, arguing that this definition is vague and overbroad. (Opp'n 5.) In their reply, Plaintiffs clarified the term "affiliates" to mean two specific Guam entities, Pacific Rim Constructors, Inc., and Pacific Rim Land Development, Inc. (Reply 5.) At oral argument, after discussion with the Court, Plaintiffs restated the proposed class definition to include employees of only Pacific Rim and indicated the possibility of amending the complaint to add the two Guam entities as co-defendants on the theory of business enterprise under the WARN Act. (Mins.) At this stage, the Court does not reach the merits question of whether Pacific Rim and the two Guam entities belonged to the same business enterprise for purposes of the WARN Act. The revised and restated proposed definition no longer refers to the undefined term, "affiliates" and therefore is ascertainable.

### IV.    CONCLUSION

For the foregoing reasons, the Court found that Plaintiffs have met their burden to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Numerosity, commonality, typicality, and adequacy have been met under Rule 23(a), and the preclusive adjudication,

predominance, and superiority inquiries respectively of Rule 23(b)(1)(B) and (b)(3) are satisfied. The Court therefore GRANTS Plaintiffs' motion to certify class under Rule 23 for their WARN Act claim and defines the class as all former employees of Pacific Rim who were assigned to work at the construction site of the IPI casino & resort in Garapan in 2018 and whose employment was terminated with an effective termination date from October 2, 2018 to October, 31 2018.

FURTHERMORE, the Court appointed Cong Nie of Banes Horey Nie & Miller, LLC to be class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 1st day of August 2025.

RAMONA V. MANGLONA
Chief Judge